ASA R. RUNYON, Respondent, *v.* HENRY DOHERTY and JOSEPH W. WADSWORTH, Appellants.

*Contract of employment — when incompetency for one only of two positions to which the employee might be assigned does not justify his discharge.*

In an action to recover damages for a breach of a contract of employment in the following terms : " We, Doherty & Wadsworth, agree to engage Mr. A. R. Runyon (the plaintiff) to take charge of the sales department of our business from April 1st, 1895, and ending Jany. 1st, 1897, at a guaranteed salary of $5,000 (Five Thousand Dollars) per year, and a commission of ¼ of 1% on all net sales, with this proviso: That if, at the end of March, 1896, we want Mr. Runyon to take a position as salesman for the balance of the year, he is willing to do so," one of the defendants testified that they understood the proviso to mean that Runyon would, if requested, at the end of March, 1896, take the subordinate position of salesman upon the same terms as to salary and compensation. The plaintiff was discharged on January 1, 1896, for the assigned reason that he was incompetent to manage the defendants' business.

*Held,* that it was not error to refuse to charge the jury that if, at the end of the first year, the 31st of December, 1895, " the plaintiff was incompetent to perform the duties which he assumed under his part of the contract to take charge of the defendants' business, and was incompetent, that they (the defendants) could then discharge him without regard to the proviso in the contract," as

the plaintiff might be incompetent for the position of manager and yet not incompetent to discharge the duties of salesman; .

That the court properly declined to charge that if the plaintiff "was incompetent for the first year, that the defendants had the right to discharge him," where the only evidence of incompetency related to the position of manager.

*Semble*, that if the plaintiff was competent for neither of the positions named in the contract, the defendants could have discharged him without assigning reasons.

APPEAL by the defendants, Henry Doherty and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of April, 1898, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of May, 1898, denying the defendants' motion for a new trial made upon the minutes.

This appeal was transferred from the first department to the second department.

*Joseph Folliard Perdue,* for the appellants.

*Charles E. Rushmore,* for the respondent.

GOODRICH, P. J.:

On March 29, 1895, the plaintiff and the defendants executed the following written agreement:

"We, Doherty & Wadsworth, agree to engage Mr. A. R. Runyon to take charge of the sales department of our business from April 1st, 1895, and ending Jany. 1st, 1897, at a guaranteed salary of $5,000 (Five Thousand Dollars) per year, and a commission of ¼ of 1% on all net sales, with this proviso : that if at the end of March, 1896, we want Mr. Runyon to take a position as salesman for the balance of the year, he is willing to do so."

The plaintiff commenced his service on April 1, 1895, and continued in the defendants' employ till January 1, 1896, when he was discharged. He brought this action to recover the amount of the salary and commission named in the contract. It was conceded by the defendants at the trial that the unpaid balance of the commissions amounted to $712. The answer admitted the making of the contract, but alleged that the defendants were induced to enter into

it by false representations of the plaintiff as to his knowledge of the business, and as to his competency to fill the position named in the contract, upon which they relied, and that they especially relied upon his representations that he was competent to act as chief or head salesman, and was familiar with the manner of dealing with customers, and fully conversant with color and combinations thereof, and competent to furnish the defendants with suggestions as to the blending and combination of colors which could be woven into their fabrics so as to attract customers, and able to take charge and control of the general management of the business, all of which was false and untrue; and that within a short time after he entered into their employ they discovered that he was wholly incompetent, but continued to employ him, in the hope of his improving, until December, 1895, when, finding their hope vain, they discharged him on January 1, 1896.

Upon these issues the action was brought to trial and the jury found a verdict for the plaintiff for the full amount of his salary for 1896, and for the commissions on sales. The defendants moved for a new trial, which was denied, and from the judgment and order the defendants appeal.

In order to understand the conditions of the contract a brief statement of previous facts is essential. The plaintiff since 1861 had been engaged in the dry goods business as a general salesman. He had for the last fifteen years been employed by the firm of Tefft, Weller & Co. as a general salesman, had some experience in the sale of silk goods, and was still in such employment.

The defendants were manufacturers of silk goods at Paterson, N. J., and had for some years employed the firm of Hayes & Runyon to sell their product. This firm had a place of business in the city of New York, and the junior member was a brother of the plaintiff. The name Runyon had some commercial value in connection with the silk business. The defendants' mills were destroyed by fire in February, 1895, and the firm of Hayes & Runyon was about to sever its relations with the defendants.

In the latter part of March the plaintiff casually met the defendant Wadsworth at the Astor House, when some conversation ensued between them upon the subject, and the plaintiff suggested his own employment. The testimony of the parties as to the particulars of

that and subsequent conversations is somewhat in dispute, but it is sufficient to say that it raised a question of fact as to the substance and import of the conversations. The plaintiff's testimony was to the effect that his experience and qualifications were fairly and correctly stated to the defendants; that he told them that he was unwilling to give up profitable and secure employment and go into new service unless he could have definite employment for a stated salary and a definite term, and that at a second interview a memorandum was made upon the back of a blank check, as follows: " March 27/95. We would agree to pay you $5,000 per year and $\frac{1}{4}\%$ on all net sales. Doherty & Wadsworth." On the twenty-ninth a third interview took place, when a memorandum written by the defendant Wadsworth was produced and considered and certain corrections made, so as to read as follows:

" We agree to engage Mr. A. R. Runyon to take charge of the sales department of our business from April 1st, 1895, and ending Jan. 1st, 1897, at a guaranteed salary of $5,000 per year and a com. of $\frac{1}{4}$ of 1% on all net sales. With this proviso, that, if at the end of March, 1896, we want Mr. R. to take a salesman's position for the balance of the year on the same terms he is willing to do so."

At the same interview the contract in suit was executed. It will be observed that it is practically an exact copy of the amended memorandum last quoted except that the words " on the same terms " in the last part of the proviso were omitted.

The course of the trial now becomes important. The plaintiff was examined and no testimony as to his competency was given by him on the direct examination, but on his cross-examination the defendants' counsel opened up the history of the plaintiff's previous condition and business experience, and brought out for the first time, and without objection from the plaintiff, the conversations between the parties during the negotiations which preceded the execution of the contract. On the redirect examination the conversations were still more fully stated without objection from the defendants. The plaintiff testified that he truthfully detailed to the defendants his previous experience and history in his various employments and referred them to the firm by which he was then employed, and did not represent himself as having the knowledge and capacity which it was alleged in the answer he professed to have. The

defendants contradicted the testimony of the plaintiff in some respects, but admitted that he referred them to his present and former employers. We must assume that the verdict establishes the correctness of the testimony of the plaintiff on disputed questions, as the court instructed the jury that the verdict must depend upon their conclusion whether the plaintiff did or did not make the alleged representations, whether the defendants relied upon them and whether such representations were false.

An exception to a refusal of the court to charge raises the important question involved in the case.

Defendants' counsel : " I ask your Honor to charge the jury that at the end of the first year, the 31st of December, 1895, if the plaintiff was incompetent to perform the duties which he assumed under his part of the contract, to take charge of the defendants' business, and was incompetent, that they could then discharge him without regard to the proviso in the contract. The Court : Declined. Mr. Wadsworth testified that the only reason for his discharge was the one to which I called the attention of the jury. Defendants except. Mr. Adams : Also, that if he was incompetent for the first year, that the defendants had the right to discharge him. The Court : They would have the right, but there is no evidence in the case, otherwise than under this reason which Mr. Wadsworth gave for his discharge, that he was incompetent. Mr. Adams : I except, and claim that they did not have to assign any reason."

It seems to us that this refusal was correct in view of the testimony of the defendant Wadsworth, who, on the cross-examination, said : " This agreement provides as follows : We, Doherty & Wadsworth, agree to engage Mr. A. R. Runyon to take charge of the sales department of our business from April 1st, 1895, to January 1st, 1897, at certain terms specified. And then there is added this proviso : That if, at the end of March, 1896, we want Mr. Runyon to take a position as salesman for the balance of the year, he is willing to do so. I recollect the use of those words. We understood that this would mean, if we requested, at the expiration of the year, that Mr. Runyon should be removed from the responsibilities and duties of the position of head of our sales department, that he would be willing to take the subordinate position of sales-

man. The special reason for putting this clause in the contract was that if he failed to manage the store and direct the business successfully he could take to the road and sell goods for the balance of the term, upon the same terms as to salary and compensation. * * * It must have been Mr. Runyon who suggested that the occasion might arise when it would be found out that he was not satisfactory to us in charge of this department."

This testimony seems to us conclusive as to the proper interpretation of the contract and the one to which the defendants gave practical construction, and it is in accordance with our own views, independently of the verdict. . It would seem by this testimony that the defendants did not in fact absolutely and solely rely, as they now claim to have done, upon the plaintiff's statements of his capacity, and that they were not entirely satisfied upon the question, but preferred to hold that question in abeyance until they could determine by the actual trial of the plaintiff's methods whether he was or was not able to fill to their satisfaction the position of manager; and if they found he was not competent, they expected to reduce him to the inferior position of salesman. This seems to negative both the allegations of the answer and the defendants' contention on this appeal.

Bearing in mind the undisputed fact that the plaintiff was at the time in the employ of an established firm, which was not likely to immediately terminate his engagement, it is reasonable to suppose that he was unwilling to break that engagement in order to take another position without assurance of its permanency. The contract must be construed to mean that the plaintiff was to be engaged for the whole period at the specified salary, the defendants to have the option, if for any reason, or even without reason, they saw fit to change his duties from the "charge of the sales department" to "at the end of March, 1896, a position as salesman * * *." But this was to affect neither the plaintiff's length of term nor the amount of his salary and commission. The plaintiff might be, and might be considered by the defendants, incompetent "to take charge of" the defendants' business, but it was not error to refuse to charge that if such was the fact the defendants "could then discharge him without regard to the proviso in the contract," for he might be incompetent for the position of manager and yet not incompetent to

discharge the duties of salesman mentioned in the proviso. The request was too broad as it did not include the right of discharge for incompetency for the position of salesman.

The second request also was not specific enough. It was "that if he was incompetent for the first year * * * the defendants had the right to discharge him." This clearly related to incompetency in the position of manager, and the court assented to the proposition and called the attention of counsel to the fact that there was no evidence in the case of incompetency, otherwise than under the reason which Mr. Wadsworth gave the plaintiff for his discharge. The testimony as to this was: "Q. Why did you discharge Mr. Runyon at the end of the year? A. I considered Mr. Runyon ——. Q. I don't care about what you considered. Why did you discharge him? By the Court: Q. Did you state to him the reasons of his discharge? A. Yes, sir. By Mr. Adams: I gave as reasons because he was not able to direct our business and select ideas for goods and combinations suitable for our line of goods. * * * One of the reasons why we discharged Mr. Runyon was because he was unable to instruct us as to what class of goods to make; that was the principal reason. General incompetency to manage the store was a subsidiary reason; we did express that to him; that general incompetency was evinced or shown by the management of the help around the store — lack of good management; I can't remember just now what he did do, or omit to do, which showed a lack of ability to manage the store; the principal thing I can remember is inability to instruct us as to what class of goods to make. It is not the only thing I can remember. I remember when we would sell goods he would hand them out in a slipshod way that would impress the customer unfavorably."

It is true that if in fact the plaintiff was competent for neither of the positions named in the contract the defendants could have discharged him without assigning reasons, but the request of counsel did not cover that theory. This is emphasized by the fact that during the first year, referred to in the request, the plaintiff was continued in the position of manager, and that he was not at any time reduced to the position of salesman.

In addition to this the court, on the request of the defendants' counsel, charged that it was the implied condition of the contract

that the plaintiff was competent and had the requisite skill and experience in and knowledge of the business of his employers to properly fill the position for which he was hired.

We have carefully examined the exceptions in respect to the evidence and find no error which justifies a reversal.

The judgment must be affirmed.

All concurred, except BARTLETT, J., absent.

Judgment and order affirmed, with costs.